IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| TOMORROW BUSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:08cv874-MHT |
| | ) | (WO) |
| SHERIFF ANDY HUGHES, in his | ) | |
| individual and official | ) | |
| capacities, and JAIL | ) | |
| COMMANDER KEITH REED, in | ) | |
| his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

Plaintiff Tomorrow Bush, a black female, asserts that
she was wrongfully terminated from her employment with the
Houston County Sheriff's Department because of her race and
gender.  The defendants are Houston County Sheriff Andy
Hughes and Jail Commander Reed.  Relying on Title VII of
the Civil Rights Act of 1964, as amended, 42 U.S.C.
§§ 1981a, 2000e to 2000e, Bush charges Hughes in his
official capacity with race discrimination.  She also
charges both Hughes and Reed in their individual capacities
with gender discrimination, pursuant to the Equal

Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, as well as race discrimination, pursuant to 42 U.S.C. § 1981, as applied through 42 U.S.C. § 1983. Jurisdiction is proper under 28 U.S.C. § 1331 (federal question) and 1343 (civil rights), as well as 42 U.S.C. § 2000e-5(f)(3) (Title VII).

Hughes and Reed now move for summary judgment on all claims. For the reasons that follow, the motion will be granted.

### I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Under Rule 56, the court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

2

## II. BACKGROUND

In January 2008, while working alone in a lock-down area for unruly inmates in the Houston County Jail, Bush attempted to deliver food to inmate Heath Whitt.  Whitt began yelling that he wanted to have sex with Bush and stating what he would like to do to her in "vividly vulgar terms."   Pl.'s Am. Compl. at 5 (doc. no. 50).   Bush eventually pepper sprayed the inmate.

Following the incident, Bush called Sergeant Glenn Jones to the scene.  After viewing a security video of the incident, ex. 4 (doc. no. 75-4), Sergeant Jones wrote a report concluding that Bush used unnecessary force by employing pepper spray as a punitive measure.  Incid. Rep. (doc. no. 80-6).  In her own description of the episode, signed and dated on the date of the incident, Bush recounted as follows:

> "At exactly 11:03 on 1-20-08 while serving trays, Inmate Heath Whitt constantly kept yelling through his cell door 'give me some pussy, give a nigga some of that pussy....' While I was upstairs in N pod on the top tier he kept yelling that through the door.  So when I had finished feeding the last cell

3

> upstairs, I went to Inmate Whitt's cell ...
> and asked him what did he say?  He just stood
> there as I told his roommate to step out of
> the cell and then Inmate Whitt said, I'm sorry
> Ms. Bush, man, I'm sorry.  I then told Inmate
> Whitt that he would not disrespect me nor any
> other female officer at the County Jail.  I
> said so who were you talking to then. [H]e
> said you and that's when I pulled my pepper
> spray out and sprayed him.  Sgt Jones was
> notified and came to the floor.  He escorted
> Inmate   Whitt   to   the   infirmary.     He
> disrespected C/O Morris the same way a few
> weeks ago."

Bush Stmt. (doc. no. 75-6).

Jail Commander Reed filed a disciplinary report against Bush, concluding that she had violated Houston County Jail Policy Number A-203, which prohibits employees from employing "corporal punishment or the unnecessary use of force" against an inmate.  Disc. Rep. (doc. no. 80-7); Code of Ethics (doc. no. 80-8).  Reed later held a hearing and decided to terminate Bush.  After conducting an appeals hearing, Sheriff Hughes sent Bush a letter concurring with Reed's decision to terminate her employment.

4

Bush filed a charge with the Equal Employment
Opportunity Commission, alleging discrimination based on
race. This lawsuit then followed.[1]

### III.  DISCUSSION

Bush's § 1981, § 1983, and Title VII claims are
governed by the familiar burden-shifting scheme set forth
in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802
(1973).  <u>See</u> <u>Brown v. Alabama Dept. of Transp.</u>, 597 F.3d
1160, 1174 n. 6 ("[The plaintiff] also brought claims under
42 U.S.C. §§ 1981 & 1983.  The analysis under those claims
mirrors that under Title VII.").  To survive summary
judgment, Bush may establish a prima-facie case of
disparate treatment by showing that she was (1) a qualified
member of a protected class; (2) subject to an adverse
employment action; and (3) treated less favorably than a
similarly situated individual outside the protected class.

---

1.  By earlier order, this court dismissed the case
in part.  <u>Bush v. Hughes</u>, 2009 WL 2905734 (M.D. Ala.
2009) (Thompson, J.).

See <u>Wilson v. B/E/ Aerospace, Inc.</u>, 376 F.3d 1079, 1087 (11th Cir. 2004); <u>see also</u> <u>Jones v. Gerwens</u>, 874 F.2d 1534, 1541 (11th Cir. 1989) ("A plaintiff alleging disparate disciplinary treatment makes out a prima facie case of discrimination 'upon a showing (1) that plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person'") (quoting <u>Moore v. City of Charlotte</u>, 754 F.2d 1100, 1105-06 (4th Cir. 1985)).

If Bush establishes these elements, then the burden shifts to Hughes and Reed to set forth a legitimate and non-discriminatory reason for their actions. See <u>Wilson v. B/E/ Aerospace, Inc.</u>, 376 F.3d 1079, 1087 (11th Cir. 2004). Their evidence should "allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 257 (1981). If Hughes and Reed articulate one or more non-discriminatory

6

reasons, "then the presumption of discrimination is rebutted, and the burden of production shifts to [Bush] to offer evidence that the alleged reason ... is pretext for illegal discrimination." <u>Wilson</u>, 376 F.3d at 1087. Evidence of pretext may include "the previously produced evidence establishing the prima facie case." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997).

Hughes and Reed contend they are entitled to summary judgment on Bush's claims, as Bush is either unable to establish a prima facie case of employment discrimination or show that their legitimate, non-discriminatory decision to terminate her was merely a pretext to engage in discrimination. In the alternative, Hughes and Reed argue they are eligible for qualified immunity on Bush's §§ 1981 and 1983 claims.

The court presumes that Bush has established prima-facie cases of race discrimination under Title VII against Sheriff Hughes and of race and gender discrimination under §§ 1981 and 1983 against Sheriff Hughes and Commander Reed.

7

See <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997) ("Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."). However, Bush's claims ultimately fail, as she cannot establish that Hughes and Reed acted with racial or gender-based animus in deciding to terminate her employment. <u>See</u> <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981) (To survive summary judgment, the plaintiff must rebut the defendant's "legitimate, nondiscriminatory reason for the employee's rejection," and provide evidence "that the legitimate reasons offered by the defendant were ... a pretext for discrimination.").

Bush's sole evidence of discrimination concerns the preferential treatment of white male officers, who, allegedly, were not dismissed despite using excessive force against inmates in the course of their employment. In order to show that employees are similarly situated, "it is necessary to consider whether the employees are involved in

or accused of the same or similar conduct and are disciplined in different ways." <u>Silvera v. Orange County School Bd.</u>, 244 F.3d 1253, 1259 (11th Cir. 2001) (internal quotations omitted).  This is generally demonstrated by the use of a "comparator," a human measuring stick for discrimination, who must be "nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." <u>Wilson</u>, 376 F.3d at 1091.

Bush asserts that four white males (Officers Keith Fitzgerald, Ronnie Dye, Donald Athey, and Jason Pearson) used greater force against inmates than she herself did, but they were not determined to have used excessive force and were not terminated as a result of their actions.[2]

_____

2.   In both her deposition and amended complaint, Bush alleges that four employees with the Houston County Jail--Officers Fitzgerald, Dye, Shelley, and Athey--were not disciplined after using excessive force against inmates.   However, in her brief opposing summary judgment, she describes only the actions of Officers Dye and Pearson.   Defense expert W. Blake Strickland, in contrast, analyzes the employment histories of Officers Fitzgerald, Dye, and Pearson.   The court has therefore (continued...)

According to Bush, Fitzgerald tasered an inmate who required medical attention and who was also spreading human waste on his cell floor, while threatening to bite medical personnel who came near him; Fitzgerald tasered the inmate two times: first, after the inmate refused to follow instructions to clean up his cell, and then again, so Fitzgerald could "gain compliance from [the inmate] while medical personnel were handling needles," Expert Op. at 12 (doc. no. 80-6); and Fitzgerald was not disciplined following the incident.  Bush also states that Dye tasered an inmate who refused to relinquish an item of contraband clothing while he was in lock-down and, though the inmate

---

2.  (...continued)
given Bush the benefit of the doubt and addressed all four proposed comparators though it could be argued that, in the end, Bush does not rely on all four.

    To be sure, Bush alleges in her amended complaint that an Officer Shelley tasered an inmate for refusing to clean up his cell.  However, she later recounted in her deposition that Officer Shelley was actually guilty of killing an inmate in an auto accident.  Because there is no additional support for this allegation and because Bush herself does not raise the issue in her brief, the court does not consider Shelley in addressing the summary-judgment motion.

did not pose an immediate threat, Dye was not penalized for his use of the weapon.  Bush further alleges that Athey accidentally tasered an inmate after "playing" with a taser, Bush Dep. at 139 (doc. no. 80-1); and that Athey was not terminated.  Finally, Bush states that Pearson utilized a chemical agent to subdue an inmate who became "verbally and physically boisterous" and refused to cease striking his cell door, Expert Op. at 12; and that Pearson was not terminated for his actions.

Bush's effort to rely on the treatment of these four officers to support her claims of discrimination fails for two primary reasons.  First, Bush witnessed directly only the incident involving Officer Fitzgerald, and she has no non-hearsay evidence concerning the other three officers.  Second, as to all four officers, she does not offer into evidence their discipline forms or employment records, even though Reed notes explicitly in his deposition that these records are maintained at the Houston County Jail, doc. no. 80-3 at 35, and despite the fact that defense expert

11

Strickland reviewed these records prior to writing his own report. Instead, in her opposition to the summary-judgment motion, Bush merely extracts portions of the opinion of defense expert, W. Blake Strickland, without filling in the gap of the missing forms and records.[3] Moreover, Strickland determined that Bush unnecessarily escalated the situation with Whitt by confronting the inmate alone in his cell and without valid cause, and he further concluded that "there was not sufficient justification for the use of non-deadly force in this incident." Expert Op. at 10. Without comparative evidence, particularly the officers' disciplinary histories and employment records, Bush is unable to demonstrate that she was treated less favorably than similarly situated colleagues.

_____

3. Bush relies upon Officers Pearson and Dye as comparators in her brief opposing summary judgment and, in the fact section, cites to Strickland's expert opinion when describing the nature of the officers' misconduct. She does not note what type of punishment, if any, they received. In her legal argument, she does not cite to any secondary source when again concluding that Pearson and Dye utilized excessive force without consequences.

Finally, even if the information about the alleged comparator could be considered adequate, Bush's claims would still fail. Admittedly, in her deposition and subsequent briefing in this litigation, Bush maintains that she used the pepper spray after Whitt approached her and threatened harm. She states that, on the day in question, she returned to Whitt's cell to retrieve his food tray, but Whitt refused to come to the cell door to deliver the tray and instead told Bush that she would have to enter the cell to recover it; that, because Bush was working alone and concerned about entering a cell with two unrestrained inmates, she insisted that Whitt bring the tray to the door, as inmates are required to do, but Whitt continued to refuse; that, eventually, Whitt's cellmate handed Bush the tray, at which time Whitt pushed his cellmate outside of the cell, past Bush who was standing just inside the cell with the door ajar; and that Whitt then approached her in a threatening manner. According to Bush, it was at this time that, frightened and seeking to protect herself, she

13

took out her pepper spray and sprayed Whitt on the side of the face and back of the head.   Whitt was reportedly unharmed.

However, at issue in this litigation is whether Sheriff Hughes and Commander Reed terminated Bush because of her race and gender.   Therefore, critical to this litigation is not the new evidence, described the preceding paragraph, Bush has now put forward in this litigation to justify her conduct but rather what information Hughes and Reed had about Bush at the time of her termination.   See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (whether an employee actually engaged in the misconduct that was reported to the decision-maker is irrelevant to the issue of whether the decision maker believed that the employee had done wrong.).   This court does not sit to determine whether Bush's termination was proper but rather whether, at the time her termination, Hughes and Reed acted with any illegal discriminatory animus.   See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361

(11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

In her statement made immediately after the incident took place, Bush admits that Whitt apologized once she entered his cell, and she never indicates that she felt threatened. Her original statement indicates that she used pepper spray not to ensure her own safety, but rather to teach Whitt a lesson, so that he "would not disrespect" Bush or other female officers. This information from Bush herself (that she pepper sprayed Whitt to punish him), as well as the statement of Sergeant Jones which tended to corroborate Bush's own recollection, was the only information Hughes and Reed had before them--at least, from the record before the court, this was the only information before them. Bush has not shown in any way that this information, which was the basis for her termination according to Hughes and Reed, was a pretext for

15

discrimination.   In other words, Bush has not shown that any of her alleged comparators used  excessive force, as she did, for the mere purpose of punishing an inmate.

Furthermore, in the absence of a statutory or constitutional violation, Hughes and Reed are also entitled to qualified immunity.   <u>See</u> <u>Garczyncski v. Bradshaw</u>, 573 F.3d 1158, 1170 (11th Cir. 2009) ("No constitutional violation occurred.   Without this element, we need not assess whether the alleged violation was clearly established.   Accordingly, the district court correctly afforded the officers qualified immunity and granted them summary judgment as to the § 1983 claims.").

                                 ***


For the foregoing reasons, Hughes and Reed's motion for summary judgment will be granted in all respects.   An appropriate judgment will be entered.

DONE, this the 11th day of May, 2010.

                          /s/ Myron H. Thompson
                        UNITED STATES DISTRICT JUDGE