IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| TOMORROW BUSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:08cv874-MHT |
| | ) | (WO) |
| SHERIFF ANDY HUGHES, in his | ) | |
| individual and official | ) | |
| capacities, and JAIL | ) | |
| COMMANDER KEITH REED, in | ) | |
| his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This case is now before the court on plaintiff Tomorrow Bush's motion to vacate or, in the alternative, to reconsider the court's summary judgment holding that she is not entitled to recover on her claims against defendant Sheriff Andy Hughes, in his official capacity, for race discrimination, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e to 2000e, and against both Hughes and defendant Jail Commander Keith Reed, in their individual capacities, for gender

discrimination pursuant to the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, as well as race discrimination, pursuant to 42 U.S.C. § 1981, as applied through 42 U.S.C. § 1983. Bush v. Hughes, 2010 WL 1904902 (M.D. Ala. 2010) (Thompson, J.). For the reasons that follow, Bush's motion will be denied.

The court presumes Bush has filed her motion pursuant to Rule 59 of the Federal Rules of Civil Procedure. "A post-judgment motion may be treated as made pursuant to either Fed. R. Civ. P. 59 or 60--regardless of how the motion is styled by the movant-depending on the type of relief sought." Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997). Here, Bush seeks to set aside the grant of summary judgment; thus, the motion is properly characterized as one under Rule 59(e) to "alter or amend a judgment." Id.

"'The only grounds for granting a Rule 59 motion [for reconsideration] are newly-discovered evidence or manifest errors of law or fact.'" Arthur v. King, 500 F.3d 1335,

2

1343 (11th Cir. 2007) (quoting In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999)).  "'A Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'"  Id. (quoting Michael Linet, Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005)).

First, Bush asserts that the court erred in rejecting evidence showing that the defendants' stated reason for terminating her was a pretext for discrimination.  She argues the court failed to consider adequately white male "comparators," see Bush, 2010 WL 1904902 at *3 (in order to show circumstantial evidence of discrimination, claimants may rely upon comparators, or similarly situated individuals outside the protected class who are "accused of the same or similar conduct and are disciplined in different ways") (quoting Silvera v. Orange County School Bd., 244 F.3d 1253, 1259 (11th Cir. 2001)); she states that, "When an examination is conducted of the actions of

the white male officers in the comparator evidence, it is clear the Defendants chose to not punish those officers in any way when the comparators used more force [than] the Plaintiff did." Pl's Mot. at 3 (Doc. No. 96). She also argues that the court "inappropriately and untimely ruled on the admissibility" of the comparator evidence in finding that she failed to meet her burden of proof at the summary-judgment stage. Id. at 4.

However, as evident in its memorandum opinion, the court did examine what comparator evidence was available in the record, which, incidentally, was provided primarily by an expert witness for the defense. It also considered Bush's deposition testimony in which she described a series of purported infractions committed by white male officers over an unspecified period of time, even though these recollections were not primarily based on Bush's personal knowledge and likely constitute inadmissible hearsay. As the court's opinion states, it is the law that comparators be "nearly identical to the plaintiff to prevent courts

4

from second-guessing a reasonable decision by the employer." Bush, 2010 WL 1904902 at *3 (quoting Wilson v. B/E/ Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004)). Bush did not submit any evidence of her comparators' employment or disciplinary records, and there is no indication in either the expert report or her deposition as to when the comparative incidents occurred or the general circumstances surrounding the incidents. Without this evidence, the court is unable to find that the white officers are "nearly identical" for the purposes of establishing a circumstantial inference of discrimination.

Second, Bush asserts that the court failed to consider evidence showing that, prior to her termination, Hughes and Reed had heard Bush's account of the incident, in which she explained that she used pepper spray only after being physically threatened by an inmate. The court noted in its memorandum opinion that critical to its decision was "what information Hughes and Reed had about Bush at the time of her termination." Bush, 2010 WL 1904902 at *4. Thus,

though Bush has maintained throughout her lawsuit in this court that she was physically threatened by the inmate, which justified her use of the pepper spray, the court concluded that, if Hughes and Reed did not have this account of events at their disposal at the pre-termination hearings, then there could be no showing of discriminatory animus.  Cf. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (whether an employee actually engaged in the misconduct that was reported to the decision-maker is irrelevant to the issue of whether the decision-maker believed that the employee had done wrong.).

In support of her motion for reconsideration, Bush cites to the parties' depositions which purportedly demonstrate that the "Defendants did in fact have the full version of the story in front of them when they made the decision to terminate Bush." Pl.'s Mot. at 4. Reviewing the evidence Bush cites to substantiate this claim, the court again comes to the conclusion it reached at the summary-judgment stage. In her deposition, Bush was unable

6

to recall "what was said" at her original determination hearing with Jail Commander Reed. Bush Dep. at 116 (Doc. No. 80-1). Describing her appeal hearing before Hughes, Bush deposed that when Hughes asked her if she had anything to present, she replied that she had given "everything" to Reed. Id. at 121. She also deposed that she told both Hughes and Reed "what happened in the incident," but she never stated for the record what it is she told them. Id. at 122.

In Reed's deposition, he stated that, before she was terminated, Bush provided a verbal statement in which she informed him that, during the incident, the inmate "had his arms sort of wide and shrugged like what-do-you-mean sort of thing." Reed Dep. at 9 (Doc. No. 80-3). Reed deposed that this was the only physical description Bush gave of the inmate, and this statement does not, by itself, suggest that Bush felt physically threatened. Hughes also acknowledged that Bush gave a verbal account of the incident, but he did not summarize this account in his

deposition. He deposed only that he based his decision to terminate Bush "upon what she told [him] in the hearing, plus any written documents that [were] submitted to [him] by either Commander Reed and/or Ms. Bush, and the video [of the incident]." Hughes Dep. at 21 (Doc. No. 80-2). Neither of the defendants' depositions supports Bush's later assertion that she used pepper spray after the inmate approached her, threatening harm.

In sum, Bush offers no testimonial evidence that she presented to the defendants "the full version of the story" (namely, the account provided to this court) prior to her termination. To the contrary, a re-examination of the materials that Bush submitted for the determination hearing shows that what Reed and Hughes had before them was evidence showing a potentially clear violation of jail policy. In a written statement, provided to Reed and penned immediately after the incident, Bush affirmed that she pepper sprayed the inmate after he verbally insulted her, so that he "would not disrespect" her or other female

8

officers.  Bush Stmt. (Doc. No. 75-6).  In another written statement, also submitted to Reed, Bush asserted that "Disrespect is not tolerated period in corrections," and "Inmates pay the price where they go to prison for disrespecting officers especially female C/O's."  Bush Stmt. at 4 (Doc. No. 75-12).  Bush never stated that she used pepper spray because she felt physically threatened. In conjunction with the statement provided by her supervising officer, which only serves to corroborate Bush's written accounts, Hughes and Reed had only inculpatory evidence before them when they decided to terminate Bush.

After again reviewing the evidence upon Bush's motion for reconsideration, the court can come to no other conclusion than that the record does not support a suggestion of either race or gender discrimination.  Bush submits no newly discovered evidence, and she has failed to demonstrate that this court committed any manifest errors of law or fact.  Rather, the motion simply recycles old

9

arguments in an attempt to relitigate matters already decided by this court.  See Arthur v. King, 500 F.3d at 1343.

                              ***

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff Tomorrow Bush's motion to vacate or, in the alternative, to reconsider (doc. no. 96) is denied.

DONE, this the 15th day of June, 2010.

                              /s/ Myron H. Thompson
                         UNITED STATES DISTRICT JUDGE